UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN F. GALTIERI,

               Plaintiff,

- against -

NEW YORK CITY POLICE PENSION
FUND,

               Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 2, 2014
                     15

**MEMORANDUM
OPINION & ORDER**

12 Civ. 1159 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Pro se Plaintiff John F. Galtieri brings this action pursuant to 42 U.S.C. § 1983

and 28 U.S.C. § 2201.  Galtieri seeks a declaratory judgment that he is entitled to withdraw from

the pension system administered by the New York City Police Pension Fund (the "Pension

Fund" or "PPF").  The Pension Fund has moved for judgment on the pleadings pursuant to Fed.

R. Civ. P. 12(c).  For the reasons set forth below, the Pension Fund's motion will be granted.

## BACKGROUND[1]

       Plaintiff is a former New York City Police Department ("NYPD") officer.

(Declaration of Amy J. Weinblatt ("Weinblatt Decl."), Ex. D:  Galtieri v. Galtieri, No. FM-13-

1018-00C, slip op. at 2 (N.J. Super. Ct. Ch. Div. June 27, 2007) ("N.J. Sup. Ct. Dec.") (Dkt. No.

---

[1]  The following facts are drawn from the Complaint, the documents attached thereto, and prior
state court proceedings of which this Court takes judicial notice.  See Jovanovic v. City of New
York, 04 CIV.8437 PAC, 2006 WL 2411541, at *5 (S.D.N.Y. Aug. 17, 2006) on reconsideration
in part, 04 CV 8437(PAC), 2008 WL 355515 (S.D.N.Y. Feb. 7, 2008) ("In reviewing [a]
[d]efendant['s] motion [to dismiss], . . . [a court] may consider documents that are in the public
record, and of which judicial notice may be taken under Federal Rule of Evidence 201.")
(citations omitted); see also S.E.C. v. Siebel Sys., Inc., 384 F. Supp. 2d 694, 699 (S.D.N.Y.2005)
("[A] complaint includes 'documents attached to the complaint as an exhibit or incorporated in it
by reference, to matters of which judicial notice may be taken, or to documents either in
plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit.'"
(quoting Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993))).

33-4))  On February 19, 2009, a jury found Galtieri guilty of second-degree murder in connection with his January 30, 2007 killing of Jeanne Kane ("Kane"), his former wife. (Weinblatt Decl., Ex. G (Kane v. Galtieri, No. 100185/08, slip op. at 2 (N.Y. Sup. Ct. Sept. 7, 2012) ("N.Y. Order Denying Motion to Vacate Attachment") (Dkt. No. 33-7); Cmplt. (Dkt. No. 1) ¶ 5)  Galtieri is currently serving a sentence of 32 years to life imprisonment in a New York State correctional facility.  (Cmplt. (Dkt. No. 1) ¶ 5)

The subject of this action is a disability pension administered by the Pension Fund.  Plaintiff retired from the NYPD on February 24, 1980, after sustaining injuries in the line of duty, Galtieri v. Kelly, 441 F. Supp. 2d 447, 449 (E.D.N.Y. 2006), and he began receiving payments from the PPF that same year.  (Cmplt. (Dkt. No. 1) ¶ 5)  In May 2009, a restraining order was served on the Pension Fund prohibiting further distributions until the conclusion of a wrongful death action brought by Galtieri's daughter on behalf of herself and her mother's estate.  (Id., Ex. B (Oct. 5, 2011 Pension Fund Ltr.) (Dkt. No. 1-1))

On September 29, 2011, Plaintiff wrote to the Pension Fund stating that he had "decided to withdraw from the . . . Pension Fund and waive any present or future benefits due my account.  Please accept this as Notice and implement my withdrawal from the fund immediately."  (Id. ¶ 9 & Ex. A)  In an October 5, 2011 letter, the Fund denied Galtieri's request. (Id. ¶ 10 & Ex. B)  The Pension Fund explained that Galtieri had

> not received pension payments since May 31, 2009 because the Fund was served with a Restraining Order dated May 27, 2009 prohibiting the Fund from making distributions from your retirement allowance until the conclusion of the case, Patricia Kane, as the limited administratrix of the estate of Jeanne Kane and Patricia Kane v. John F. Galtieri.  Accordingly, no distributions have or will be made until the case has been resolved.
>
> Further, please be advised that once a member has retired from the Fund, there is not [a] mechanism by which a member may withdraw from the retirement system. The Fund is legally obligated to make pension distributions in accordance with

the law. Therefore, when the Restraining Order has been lifted or the Fund
receives further Orders from a court of competent jurisdiction, distributions shall
resume in accordance with such Order.

(Cmplt., Ex. B (Oct. 5, 2011 Pension Fund Ltr.) (Dkt. No. 1-1) (underlining added))

Plaintiff claims that "the pension he receives is Exempt from Execution,
Garnishment, Attachment, Assignment or any other legal process pursuant to The New York
City Administrative Code [and the New York and United States Constitutions]," and that the
Pension Fund's refusal to permit him to withdraw from the pension system and close his account
violates his due process rights under the Fourteenth Amendment. (Cmplt. (Dkt. No. 1) ¶¶ 1, 6, 8,
12)

## RELATED LITIGATION

Galtieri has been an active litigant for the past fourteen years. Because his prior
litigation is relevant to the Pension Fund's arguments that it is entitled to judgment on the
pleadings, these cases are discussed in some detail below.

On January 3, 2000, Galtieri filed a divorce action against Kane in New Jersey.
(Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 3) After the New Jersey Superior
Court ordered him to pay Kane temporary support and maintenance, Galtieri filed a bankruptcy
petition, thereby obtaining a stay of the divorce proceedings. (Weinblatt Decl., Ex. B (Galtieri v.
Galtieri, FM-13-1018-00C (N.J. Super Ct. Ch. Div. May 19, 2003) ("Final Judgment of
Divorce") (Dkt. No. 33-2)) at 3)) A judgment of divorce was later entered on May 19, 2003,
however.[2] (Id.) The New Jersey Superior Court ordered Galtieri to pay Kane $2,200 per month

---

[2] Galtieri and Kane were married on July 9, 1976. (Weinblatt Decl., Ex. B (Final Judgment of
Divorce) (Dkt. No. 33-2) at 1) Throughout their marriage, Galtieri viciously beat Kane. (See
Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 1, 3 ("Within months of their
wedding, Galtieri began to subject Jeanne to brutal and unsparing violence that continued
throughout most of the 27 year marriage.")) Kane endured this abuse until November 10, 1999,

3

in alimony via garnishment of his monthly Social Security disability benefit payment; fifty

percent of the net proceeds from the sale of the marital residence; fifty percent of the net

proceeds from a mortgage held by the parties; and $30,000 for jewelry that Galtieri had taken

from Kane. (Id. at 3-4)  The court also concluded that Kane suffered from Battered Women's

Syndrome and awarded her $400,000 in damages on her claim of spousal abuse,[3] as well as

attorneys' fees and payment of pendente lite support arrears.  (Id. at 5-8)  The New Jersey Final

Judgment of Divorce did not refer to Galtieri's police pension.

 After the May 2003 divorce decree, "Galtieri continued to harass [Kane] through

frivolous and vexatious litigation in order to deny her the alimony, distribution, and awards she

was entitled to." (Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 7)  On

December 12, 2003, the New Jersey Superior Court issued an amended order directing that

Kane's alimony payments be made directly from Galtieri's police pension and social security

disability benefits.  Plaintiff appealed that order, arguing that his pension "was immune from

claims for alimony, because the disability pension was the equivalent of an award for personal

injuries."  Galtieri v. Kane, A-4026-04T1, 2005 WL 2757230, at *3 (N.J. Super. Ct. App. Div.

Oct. 26, 2005).  On August 19, 2004, the Appellate Division of the New Jersey Superior Court

affirmed, concluding that Galtieri's claims were meritless.  Id.

 While the December 12, 2003 appeal was pending, Galtieri moved to vacate the

Final Judgment of Divorce on statute of limitations and fraud grounds.  That motion was denied

by the trial judge, and Galtieri again appealed.  In his appeal, Galtieri argued "that the Superior

---

when she obtained a temporary restraining order against Galtieri.  (Id. at 3)  After Galtieri sued
for divorce in January 2000, Kane filed an answer and counterclaims alleging extreme cruelty.
(Id.)

[3] The $400,000 spousal abuse damage award consisted of $50,000 in compensatory damages
and $350,000 in punitive damages.  (Weinblatt Decl., Ex. B (Final Judgment of Divorce) (Dkt.
No. 33-2) at 5)

4

Court of New Jersey lacked jurisdiction to enforce an order against [his pension], and that his disability pension is an asset that is immune from the court's garnishment order." Id. The Appellate Division ruled against Galtieri, finding that he had "had his day in court at both the trial and appellate levels on December 12, 2003, and August 3, 2004, and on August 19, 2004, [where] we affirmed the trial court's order of garnishment from his [police pension] and his social security pension." Id. (alteration in original) (citations omitted).

In January 2005, Judge McGann of the New Jersey Superior Court ordered that $1,500 of the $2,200 monthly alimony award be withheld from Plaintiff's PPF pension. Id. The court further ordered that one-half of Galtieri's monthly Social Security disability benefit payment be withheld and paid directly to Kane. (Weinblatt Decl., Ex. C: Jan. 7, 2005 Order (Dkt. No. 33-3) at 1) On March 11, 2005, Judge McCann issued an amended domestic relations ("DRO") order directing the PPF to make the monthly $1,500 payments to Kane. Galtieri, 2005 WL 2757230, at *3.

In April 2005, Kane "moved to withhold a percentage of Galtieri's Social Security benefits to apply to the shortfall between the $1,500 previously ordered and the $2,200 obligation and to reduce the alimony arrears which, at that time, exceeded $50,000." (Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 8) In opposing Kane's motion, Galtieri threatened to withdraw from the Social Security disability rolls "if the court continues to harass me and grants [Kane's] motion." (Id.) In May 2005, the court ordered that $1,222 per month be withheld from Galtieri's Social Security disability benefits and paid to Kane to satisfy, in part, Galtieri's alimony obligation of $2,200 per month, with any excess to be applied to Galtieri's arrears. (Id. at 9) In July 2005, Galtieri withdrew from the Social Security system "in order to

prevent [Kane] from receiving the amounts that were being garnished as alimony."[4]  (Id.)  Kane then asked the New Jersey court to order that the entire alimony obligation of $2,200 per month be paid directly to her from the PPF pension.  The court granted that request in August 2005. (Id.)  Between October 2005 and December 2006, Galtieri made numerous court filings designed to deprive Kane of payments from the PPF.[5]  (Id. at 11)

Galtieri also appealed Judge McGann's amended DRO on several grounds, including that "the trial court abused its authority in levying against [his police pension], which [Galtieri claimed] is statutorily protected from garnishment, execution, and levy."  Galtieri, 2005 WL 2757230, at *4.  In an October 26, 2005 opinion, the Appellate Division rejected all of Galtieri's arguments.  The court noted that Galtieri "has avoided paying alimony since it was awarded, and he has continuously filed repetitive litigation in order to do so.  The garnishment of [Galtieri's NYPD pension] may be the only way to enforce plaintiff's obligation [to pay alimony]."  Id. at *6.  The Appellate Division also expressed "concern from the procedural history of this case that plaintiff may be abusing the system.  His conduct continually harasses defendant through this unending litigation, as well as wastes both judicial time and resources." Id.

In 2005, while the New Jersey litigation was ongoing, Plaintiff initiated an Article 78 proceeding in New York Supreme Court, New York County, against, among others, the trustees of the Pension Fund.  Plaintiff sought "a judgment annulling the actions of [the PPF], with respect to the disbursement of his [pension]," claiming that "such disbursements constitute

---

[4] Deprived of the alimony payments – which were the product of garnishing Galtieri's Social Security benefits – Kane was unable to pay her mortgage.  (Weinblatt Decl., Ex. D (Dkt. No. 33-4) at 9)

[5] The New Jersey Superior Court sanctioned Galtieri for his "frivolous, duplicative and vexatious" court filings.  (Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 11)

an illegal garnishment and unlawful taking." Galiteri v. Kelly, No. 108166/05, slip op. at 1

(N.Y. Sup. Ct. Sept. 26, 2005). The Supreme Court dismissed Galtieri's action for lack of

jurisdiction. The court noted that it was required to honor the judgments of New Jersey state

courts pursuant to the Full Faith and Credit Clause of the United States Constitution, and that

"[t]o the extent that petitioner seeks to change or to modify the orders he deems offensive, his

remedy is to appeal the New Jersey orders to the appropriate New Jersey courts." Id. at 4-5.

Plaintiff and his new wife, Marilyn Galtieri, then commenced a Section 1983

action in the Eastern District of New York against, among others, the trustees of the Pension

Fund, alleging violations of their rights to equal protection and due process under the New York

State and U.S. constitutions. See Cmplt. (Dkt. No. 1), No. 05 Civ. 4798 (JFB) (E.D.N.Y. Oct.

11, 2005). The lawsuit sought damages for the claimed illegal garnishment of Galtieri's pension.

Galtieri, 441 F. Supp. 2d at 449. Galtieri asserted that

> [t]he discriminatory conduct complain[ed of] . . . includes:  unlawful taking and
> deprivation of my rights to property, New York City Accident Disability Pension
> and equal treatment under the laws of the State of New York.  The PPF has
> singled me out and by illegally garnishing my pension has deprived me of equal
> protection afforded other recipients of accident disability pensions.

Cmplt. (Dkt. No. 1), No. 05 Civ. 4798 (JFB) (E.D.N.Y. Oct. 11, 2005) at ¶ 4.

Judge Bianco determined that he lacked subject matter jurisdiction to hear these

claims under the Rooker-Feldman doctrine, however, which prohibits a federal court from

hearing appeals of state court judgments. Although brought under the guise of Section 1983 and

ostensibly directed at the Pension Fund's actions – rather than at the state court judgments

themselves – Judge Bianco concluded that "the essence of th[e] lawsuit is an appeal of the New

Jersey court's judgment which ordered that plaintiff John Galtieri's pension be garnished for the

purpose of satisfying his alimony obligations." Galtieri, 441 F. Supp. 2d at 458. Judge Bianco

dismissed the lawsuit on June 19, 2006, as violative of the Rooker-Feldman doctrine. Id. There
was no appeal.

On January 30, 2007, Plaintiff filed a complaint in New York Supreme Court,
Richmond County, seeking to enjoin further disbursements from his PPF pension to Kane.
(Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 2)  That same day, Galtieri
murdered Kane, shooting her multiple times in the head while she sat in her car at a Staten Island
parking lot waiting for their daughter's bus to arrive.[6]  (Id.)

In June 2007, Galtieri filed a motion to vacate the May 2005 New Jersey Superior
Court order requiring that $1,222 a month be garnished from his Social Security benefits to pay
alimony, arguing that – at the time of Kane's death – he had satisfied his financial obligations to
her.  (Id. at 14-15)  Patricia Kane, the only child of Plaintiff and Jeanne Kane (id. at 1), filed a
cross-motion requesting that the monthly payment now be made to Kane's estate in order to
satisfy the arrears and other judgments owed to her mother at the time of her death.[7]  (Id. at 14)
The court issued a judgment in favor of the estate of Jeanne Kane, with Patricia as administratrix,
for $620,727.76, citing case law holding that an action to recover unpaid installments of alimony
under a decree of divorce is not abated by the recipient's death, and that the estate may be
substituted in decedent's place to pursue the action.  (Id. at 20-22)  With interest, the judgment
amounted to $672,582.06, payable through continued garnishment of Galtieri's Social Security
disability benefits and his PPF pension.  (Id. at 23)

---

[6]  Galtieri was arrested the following day in South Carolina as he was driving back to Florida.
(Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 1-2)  Galtieri had moved to
Florida after a bench warrant was issued for his arrest in New Jersey for failure to pay temporary
support to Kane.  (Id. at 3)

[7]  The New Jersey Superior Court allowed Patricia, the administratrix of her mother's estate, to
intervene in order to oppose Galtieri's motion.  (Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.)
(Dkt. No. 33-4) at 12)

After murder charges were brought against Galtieri, his second wife – Marilyn Galtieri – commenced divorce proceedings against him in Florida. Those proceedings resulted in a "Marital Settlement Agreement" in which Marilyn Galtieri was granted a 99.8 percent interest in Plaintiff's PPF pension. (Weinblatt Decl., Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-7) at 3) This agreement was later incorporated into an April 15, 2009 Florida judgment of divorce. (Id.)

Following her mother's murder, Patricia Kane had filed a wrongful death action against Galtieri on behalf of herself and her mother's estate in New York Supreme Court, Richmond County. On May 27, 2009, after Galtieri had been convicted of second-degree murder, Justice John A. Fusco of New York Supreme Court, Richmond County, issued an ex parte order attaching Plaintiff's pension. That order directed the Sheriff of the City of New York, "[p]ursuant to Sections 6201.4 and 6211 of the Civil Practice Law and Rules[,] . . . [to] levy upon any retirement benefits to be paid to, or for the benefit of, the defendant, John F. Galtieri, . . . by the New York City Police Pension Fund . . . up to the amount of $10,000,000 and any costs and sheriff's fees." [8] (Weinblatt Decl., Ex. E (Kane v. Galtieri, Index No. 100185/08,

---

[8] Section 6201.4 provides,

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants when: . . . 4. the action is brought by the victim or the representative of the victim of a crime, as defined in subdivision six of section six hundred twenty-one of the executive law, against the person or the legal representative or assignee of the person convicted of committing such crime and seeks to recover damages sustained as a result of such crime pursuant to section six hundred thirty-two-a of the executive law.

N.Y. C.P.L.R. § 6201.4.

Section 6211 provides, in part,

> An order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment, or as provided in section sixty-two

slip op. at 1-2 (N.Y. Sup. Ct. May 27, 2009) ("N.Y. Ex Parte Attachment Order") (Dkt. No. 33-5)))

Plaintiff sought to vacate the attachment order, and both the Pension Fund and Marilyn Galtieri were granted leave to intervene in the action.  (Id., Kane v. Galtieri, No. 100185/08, slip op. at 10 (N.Y. Sup. Ct. Mar. 8, 2010) ("Decision Confirming N.Y. Attachment Order") (Dkt. No. 33-5))  In seeking to vacate the attachment order, Plaintiff argued that "his pension 'is legally and statutorily protected from execution, garnishment, attachment or any other process whatsoever" under the New York City Administrative Code.  (Id. at 8)  Justice Fusco disagreed, however, noting that "[i]t is well established" under New York law "that '[v]ested rights in a non-contributory pension plan are marital property to the extent that they were acquired between the date of the marriage and the commencement of a matrimonial action, even though the rights are un-matured at the time the action is begun.'"  (Id. (quoting Majauskas v. Majauskas, 61 N.Y.2d 481, 485-86 (1984))

Justice Fusco concluded that Patricia Kane could recover in the wrongful death action because her mother's estate had "a clear right to share in the pension funds accrued on behalf of [Galtieri] during the course of their marriage, and may be awarded same in the

---

hundred five of this article. It shall specify the amount to be secured by the order of attachment including any interest, costs and sheriff's fees and expenses, be indorsed with the name and address of the plaintiff's attorney and shall be directed to the sheriff of any county or of the city of New York where any property in which the defendant has an interest is located or where a garnishee may be served. The order shall direct the sheriff to levy within his jurisdiction, at any time before final judgment, upon such property in which the defendant has an interest and upon such debts owing to the defendant as will satisfy the amount specified in the order of attachment.

N.Y. C.P.L.R. § 6211.

judgment of divorce."[9]  (Id. at 9)  The wrongful death action proceeded to trial, and the jury

returned a verdict of more than $31 million in favor of Patricia Kane and her mother's estate.

(Weinblatt Decl., Ex. F:  Kane v. Galtieri, Index No. 100185/08 (N.Y. Sup. Ct. May 11, 2012)

("Notice of Entry of Final Judgment") (Dkt. No. 33-6))  Judgment was issued against Galtieri

and in favor of Patricia Kane and her mother's estate in the amount of $31,736,043.00.  (Id.)

   Galtieri again moved to vacate the attachment order, repeating his earlier

arguments that his pension "is exempt from execution, garnishment, attachment or assignment."

(Weinblatt Decl., Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-7) at

4)  Galtieri also argued that – to the extent New York law authorized such an attachment – "it

represents an unconstitutional infringement upon his rights of contract and due process under the

New York State and United States Constitutions."  (Id.)

   In denying Galtieri's motion to vacate the attachment, and in granting Patricia

Kane and the Kane estate's motion for an order directing the Sheriff and the PPF to turn over the

pension funds to Patricia Kane and the Kane estate, Justice Minardo of the New York Supreme

Court noted that "[e]ssentially the same argument as that tendered herein was raised and rejected

by Justice Fusco in his March 2010 Decision and Order, which remains in full force and effect.

Accordingly, [Galtieri] is bound by that determination."  (Id.)  The court went on to note that

New York State pensions are not "exempt from the reach of the Son of Sam Law (Executive

Law § 632-a)," which "was specifically intended to ensure 'that convicted criminals are held

accountable to their victims financially, regardless of their source of wealth.'"  (Id. (quoting New

York State Office of Victim Servs. ex rel. Balogh v. Raucci, 97 A.D. 3d 235, 239 (3d Dept.

---

[9]  Justice Fusco further held that Marilyn Galtieri did not have a right to share in the pension
proceeds because she "was not married to [Galtieri] during the time that his pension rights were
accruing."  (Weinblatt Decl., Ex. E (Decision Confirming N.Y. Attachment Order) (Dkt. No. 33-
5) at 9)

2012), rev'd sub nom. State Office of Victim Servs. v. Raucci, 20 N.Y.3d 1049 (2013) (emphasis in original) (internal citation and quotation marks omitted)).[10]

On October 12, 2012, Justice Minardo directed the Sheriff of the City of New York and the PPF to "pay any and all money currently held by them from the retirement benefits of the defendant, John F. Galtieri . . . , to the plaintiff, Patricia Kane, individually and as the Administratrix of the Estate of Jeanne Kane after deducting any administrative fees attributable to such funds." (Weinblatt Decl., Ex. H:  Kane v. Galtieri, Index No. 100185/08 (N.Y. Sup. Ct. Oct. 12, 2012) ("Execution Order") (Dkt. No. 33-8) at 3))  Justice Minardo further ordered that the PPF "make any further payments due from such fund on behalf of the defendant John F. Galtieri, to the plaintiff."  (Id.)

\*       \*       \*       \*

Galtieri filed the instant action against the Pension Fund on October 31, 2011, in the Northern District of New York.  (Cmplt. (Dkt. No. 1) ¶ 1)  In the Complaint, Galtieri "seeks relief in the form of a Declaratory Judgment determining his rights to withdraw as a pension recipient and close his account with the [Pension Fund]."  (Id. ¶ 14)  The case was transferred to

---

[10]  Marilyn Galtieri intervened in this action as well, arguing that she was the rightful beneficiary of the PPF pension by virtue of the Marital Settlement Agreement entered into by her and Galtieri in Florida.  (Weinblatt Decl., Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-6) at 6)  In rejecting Marilyn Galtieri's objections to the motion filed by Patricia Kane and the Kane estate, the court found that Marilyn Galtieri had "been afforded a full and fair opportunity to litigate the issue before [Justice Fusco]," that he had rejected her arguments, and that she was "precluded from re-litigating that issue before this Court."  (Id. at 7-9)  The court went on to state that it was obvious from the timing of the Marital Settlement Agreement in Florida – one month after Galtieri's murder conviction – "that its primary if not sole purpose was to render [Galtieri] judgment-proof in the wrongful death action then pending against him in this Court."  (Id. at 8)  The court held that such a conveyance "was patently void" under New York law and "not entitled to Full Faith and Credit in New York."  (Id.)  Finally, Justice Minardo noted that the Florida courts "have already declined to rule upon the question of [Marilyn's] right to compel payment from the PPF, and have committed the resolution of that matter to the New York State courts."  (Id. at 9)

this District by order dated February 10, 2012, due to improper venue (Dkt. No. 12), and

assigned to this Court on February 15, 2012. (Dkt. No. 13)  Pending before the Court is the

Pension Fund's motion for judgment on the pleadings pursuant to Fed. R. Civ. P 12(c).  (Dkt.

No. 28)

## DISCUSSION

## I.    LEGAL STANDARD

### A.    Motion for Judgment on the Pleadings Under Rule 12(c)

In deciding a Rule 12(c) motion, courts apply the same standard applicable to a

motion to dismiss under Rule 12(b)(6).  Bank of N .Y. v. First Millennium, Inc., 607 F.3d 905,

922 (2d Cir. 2010) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)).  To survive

such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  To meet this standard, a

complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and

common sense[,]" "to infer more than the mere possibility of misconduct."  Id. at 679.  While the

court must "accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen

Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of

Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in

favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)),

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice [to establish entitlement to relief]."  Iqbal, 556 U.S. at 678.

"On a 12(c) motion, the court considers 'the complaint, the answer, any written

documents attached to them, and any matter of which the court can take judicial notice for the

factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). "In deciding the motion, the Court can consider documents referenced in the complaint and documents that are in the plaintiff['s] possession or that the plaintiff[ ] knew of and relied on in bringing suit." Cowan v. Ernest Codelia, P.C., No. 98 Civ. 5548(JGK), 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2011). Moreover, "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted). "The Court may also properly consider documents or information contained in defendant's motion papers if the plaintiff has knowledge or possession of the material and relied on it in drafting the complaint." Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, No. 11 Civ. 3327(ER), 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013) (citing Hoy v. Incorporated Village of Bayville, 765 F. Supp. 2d 158, 163 (E.D.N.Y. 2011)). Finally, "[t]he court may also take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties." Reisner v. Stoller, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999).

### B.   Pro Se Submissions

Pro se complaints are reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). Pro se pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Allegations made in a pro se plaintiff's accompanying memorandum of

14

law, where they are consistent with those in the complaint, may also be considered.  See Coakley v. 42nd PCT. Case 458, No. 08 Civ. 6202(JSR), 2009 WL 3095529, at *3 (S.D.N.Y. Sept. 28, 2009) (citing Donahue v. U.S. Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990)).  To defeat a defendant's motion under Rule 12(b)(6) or Rule 12(c), however, a pro se plaintiff's pleadings must go beyond mere "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions.'"  Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James W. Moore, et al., Moore's Federal Practice § 12.34(1)(b) (3d ed. 1997)).

## II.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION**

As an initial matter, this Court must consider whether it has subject matter jurisdiction over Galtieri's claims.  "The Rooker-Feldman doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts."  Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010). Rooker-Feldman applies to federal actions "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

There are four requirements for application of the Rooker-Feldman doctrine:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

Hoblock v. Albany Cty. Bd. Of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks, footnote, and alterations omitted).  The first and fourth requirements are "procedural," whereas the second and third are "substantive."  Id.  If all four requirements are met, a district

court must dismiss for lack of subject matter jurisdiction.

All four requirements are satisfied here. As to the "state court loser" requirement, before the instant lawsuit was filed in October 2011, four state courts had rendered final judgments concerning (1) the susceptibility of Plaintiff's pension to legal process, and (2) Plaintiff's right to control disbursements from his pension account. Because these courts ruled against Galtieri in every instance, he clearly qualifies as a "state-court loser[ ]." Exxon Mobil, 544 U.S. at 284.

The first of these judgments was issued in August 2004, when the Appellate Division of the New Jersey Superior Court affirmed the Final Judgment of Divorce over Plaintiff's objection that his "disability pension is an asset that is immune from the court's garnishment order." Galtieri, 2005 WL 2757230, at *3. The second relevant decision was issued in October 2005, when the Appellate Division upheld the Amended DRO and rejected Plaintiff's contention that his pension is "statutorily protected from garnishment, execution, and levy." Id. at *4. The third final determination rendered against Galtieri arose from the Article 78 proceeding he initiated against the Pension Fund in New York Supreme Court. Galtieri argued in that proceeding that the Pension Fund's disbursement of proceeds from his pension to Kane constituted an illegal garnishment and unlawful taking. In dismissing the suit, the New York court held that, under the Full Faith and Credit Clause of the Constitution, it was required "to give the same effect to a properly obtained New Jersey divorce decree that New Jersey would give." Galtieri, No. 108166/05, slip op. at 1, 4-5.

Finally, the fourth state court decision addressing Galtieri's right to control the proceeds of his pension was issued by Justice Fusco, when he denied Plaintiff's request to vacate the New York Attachment Order. In seeking vacatur of the attachment, Galtieri had again

argued that "his pension 'is legally and statutorily protected from execution, garnishment,

attachment or any other process whatsoever'" under the New York City Administrative Code.

(Weinblatt Decl., Ex. E (Decision Confirming N.Y. Attachment Order) (Dkt. No. 33-5) at 8

(quoting N.Y.C. Admin. Code § 13-264))  Plaintiff's appeal of Justice Fusco's order was

dismissed on July 29, 2011 – prior to the filing of this lawsuit – for failure to perfect.[11]

(Weinblatt Decl., Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-6) at

1)  In sum, the first requirement for application of the Rooker-Feldman doctrine – that the federal

court plaintiff be a "state court loser" – is satisfied here.

        The second requirement for application of the Rooker-Feldman doctrine is that

plaintiff complains of an injury caused by a state court judgment.  See McKithen v. Brown, 481

F.3d 89, 97-98 (2d Cir. 2007) ("What Exxon Mobil and Hoblock do make clear is that the

applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-

court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion

---

[11] Although Justice Fusco's March 8, 2010 decision denying Galtieri's motion to vacate the attachment order is not a "final judgment" for purposes of determining Galtieri's liability in the underlying wrongful death action, it is a final judgment as to whether Galtieri's pension is subject to attachment under New York and federal law.  A judgment is final for Rooker-Feldman purposes where "the state proceedings [have] ended."  Exxon Mobil, 544 U.S. at 291.  The First Circuit has explained that "[g]enerally speaking, state proceedings will have 'ended' in three situations":  (1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved;" (2) "if the state action has reached a point where neither party seeks further action,"; and (3) "if the state court proceedings have finally resolved all of the federal questions in the litigation, [even if] state law or purely factual questions (whether great or small) remain to be litigated."  Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24-25 (1st Cir. 2005).  In other words, "Rooker-Feldman applies where the state proceeding has ended with respect to the issues that the federal plaintiff seeks to have reviewed in federal court, even if other matters remain to be litigated.  Id. at 26 (emphasis in original).  Here, insofar as Galtieri sought to challenge the legality of the attachment order, the state court proceedings ended on July 29, 2011, when the Appellate Division dismissed Galtieri's appeal of Justice Fusco's decision for failure to perfect.  (Weinblatt Decl., Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-6) at 1)

law), but rather on the <u>causal relationship</u> between the state-court judgment and the injury of which the party complains in federal court.") (emphasis in original). Here, the injury that Galtieri complains of – unlawfully being deprived of his right to control disbursements from his police pension – was caused by the state court judgments discussed above.

   The Supreme Court has stated that "'[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction [in federal court] and state law determines whether the defendant prevails under principles of preclusion.'" <u>Exxon-Mobil</u>, 544 U.S. at 293 (quoting <u>GASH Assocs. v. Rosemont</u>, 995 F.2d 726, 728 (7th Cir. 1993)). However, <u>Rooker-Feldman</u> is not rendered inapplicable merely because a plaintiff – in a later federal action – styles his claim as a Section 1983 suit brought to vindicate a property right guaranteed by the Fourteenth Amendment. The Second Circuit has made clear that "a federal plaintiff cannot escape the <u>Rooker-Feldman</u> bar simply by relying on a legal theory not raised in state court." <u>Hoblock</u>, 422 F.3d at 87. "In other words, the simple assertion of a constitutional claim does not create an independent injury if the plaintiff's injury is caused by the state court judgment." <u>In re Dayton</u>, 786 F. Supp. 2d 809, 816 (S.D.N.Y. 2011).

   In <u>Hoblock</u>, the Second Circuit illustrated this point with a hypothetical:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state court judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking a reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

<u>Hoblock</u>, 422 F.3d at 87.

   Here, New Jersey and New York courts have issued orders and judgments holding

that Galtieri's pension is subject to legal process, including garnishment and attachment. These rulings have divested Galtieri of any right to control disbursements from his police pension. In the instant action, Galtieri seeks to reassert control over his pension through the device of withdrawing from the pension system and closing his account. Granting Galtieri the relief he seeks, however, would require this Court to overturn the prior state court decisions and render them a nullity, thus violating the Rooker-Feldman doctrine.

While Galtieri brought this suit against the Pension Fund – as opposed to his daughter and the Kane estate – the Second Circuit has "made plain" that "a plaintiff may not elude the Rooker-Feldman doctrine by engaging in clever pleading fictions." Galtieri, 441 F. Supp. 2d at 455. That is because "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's action, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88. Thus, "[w]here a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state court judgment that only the Supreme Court can hear." Id. Although the named defendant in the instant action is the Pension Fund, Galtieri's alleged due process injury arises from the Pension Fund's compliance with the underlying state court orders of garnishment and attachment.

The third Rooker-Feldman requirement is likewise satisfied, because Galtieri is, in effect, seeking review and reversal of the state court judgments. Judge McGann ordered that Plaintiff's pension be garnished, Justice Fusco ordered that it be attached, and Justice Minardo issued an order of execution directing the Pension Fund to pay all proceeds from the pension to Patricia Kane to satisfy the wrongful death judgment. Plaintiff seeks to overturn all of these

decisions through the device of complaining that the Pension Fund has unlawfully refused to permit him to close his account. As noted above, however, permitting Galtieri to withdraw from the system and close his account would essentially negate the New Jersey and New York state court orders of garnishment and attachment (as well as the more recent order of execution issued by Justice Minardo).

The last requirement for application of the Rooker-Feldman doctrine "involves timing – namely, the federal suit must have been initiated after the challenged state judgment." Galtieri, 441 F. Supp. 2d at 458. That requirement is satisfied here because, as noted above, the instant suit implicates four prior state court judgments and decisions concerning Plaintiff's right to control disbursements from his pension.

Because all of the requirements for application of the Rooker-Feldman doctrine are satisfied, this action will be dismissed for want of subject matter jurisdiction.

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL OR RES JUDICATA

Even assuming, arguendo, that this Court has subject matter jurisdiction, Plaintiff's claims are barred by collateral estoppel and res judicata.

### A.   Collateral Estoppel

In the instant action, Galtieri repeats his claim that his pension is "Exempt from Execution, Garnishment, Attachment, Assignment or any other legal process pursuant to The New York City Administrative Code . . . The Constitution of the State of New York . . . The 'Non-impairment' Clause [of] The United States Constitution . . . The 'Contract' Clause and The Fourteenth Amendment, the 'Due Process' Clause." (Cmplt. (Dkt. No. 1) ¶ 6) Galtieri has repeatedly made these same arguments before New Jersey and New York state courts. As discussed above, those courts have repeatedly and without exception rejected those arguments.

See, e.g., Weinblatt Decl., Ex. D (N.J. Sup. Ct. Dec.) (Dkt. No. 33-4) at 8 (rejecting Galtieri's

argument that his pension is not subject to attachment or garnishment; "All of this litigation has

revolved around the same theme: Galtieri's claim that his disability pension is not subject to

wage garnishment for the enforcement of [Kane's] alimony award.  This argument has been

rejected by every court that has considered it."); id. Ex. E (Decision Confirming N.Y.

Attachment Order) (Dkt. No. 33-5) at 8 (rejecting Galtieri's argument that "his pension 'is

legally and statutorily protected from execution, garnishment, attachment or any other process

whatsoever"; id. Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-7) at 4

(rejecting Galtieri's argument that "his pension . . . is exempt from execution, garnishment,

attachment, assignment or any other legal process under the provisions of, e.g., the

Administrative Code of . . . New York City"; also rejecting argument that New York law

"represents an unconstitutional infringement upon his rights of contract and due process under

the New York State and United States Constitutions"; "[e]ssentially the same argument as that

tendered herein was raised [before] and rejected by Justice Fusco in his March 2010 Decision

and Order, which remains in full force and effect").

### 1.   **Applicable Law**

"[A] federal court must give to a state-court judgment the same preclusive effect

as would be given that judgment under the law of the State in which the judgment was rendered."

Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Moreover, the nature of a

plaintiff's federal claims does not affect the prior rulings' preclusive effect: "Section 1983 . . .

does not override state preclusion law and guarantee petitioner a right to proceed to judgment in

state court on [his] state claims and then turn to federal court for adjudication of [his] federal

claims."  Id. at 85.

"Under New York law, collateral estoppel or issue preclusion bars a party from re-litigating an issue that (1) was actually and necessarily decided in a prior proceeding, and (2) [] the party against whom the doctrine is asserted had a full and fair opportunity to litigate in the prior proceeding." Thomas v. Venditto, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (footnote omitted) (citing Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995); D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (1990)).

New Jersey law requires a party claiming collateral estoppel to establish the following five elements:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Jake Ball Trust v. Durst, CIV. 12-5255 JBS/AM, 2013 WL 4008802 (D.N.J. Aug. 5, 2013) (quoting State v. Brown, 394 N.J. Super. 492, 502 (App. Div. 2007)).

## 2. Analysis

The issue of whether Galtieri's pension is subject to legal process was raised by Galtieri in multiple cases before the New Jersey and New York state courts.  In entering orders of garnishment, attachment, and execution concerning Galtieri's pension, the state courts explicitly and necessarily rejected Galtieri's argument that his pension is not subject to legal process.  The decisions issued by the state courts demonstrate that Galtieri "actually litigated," and "had a full and fair opportunity" to litigate, this issue in these earlier proceedings.  Accordingly, Galtieri is collaterally estopped from arguing before this Court that his pension is exempt or immune from legal process under New York City's Administrative Code, the New York State Constitution, or the United States Constitution.  The fact that Galtieri brings this suit

22

under Section 1983 does not change the analysis, because collateral estoppel "'bars relitigation

of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding,

<u>regardless of whether the two suits are based on the same cause of action</u>.'" <u>Thomas</u>, 925 F.

Supp. 2d at 361 (quoting <u>Postlewaite v. McGraw-Hill</u>, 333 F.3d 42, 48 (2d Cir. 2003)) (emphasis

in <u>Thomas</u>).

> **B.   <u>Res Judicata</u>**
>
> > **1.   <u>Applicable Law</u>**
> >
> > The doctrine of <u>res judicata</u> provides that

> "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a
> subsequent action between the same parties, or those in privity with them, upon
> the same claim or demand.  It operates to bind the parties both as to issues
> actually litigated and determined in the first suit, and as to those grounds or issues
> which might have been, but were not, actually raised and decided in that action.
> The first judgment, when final and on the merits, thus puts an end to the whole
> cause of action."

<u>Epperson v. Entm't Express, Inc.</u>, 242 F.3d 100, 108-09 (2d Cir. 2001) (quoting <u>Saylor v.

Lindsley</u>, 391 F.2d 965, 968 (2d Cir.1968) (citations omitted)).  "The primary purposes of res

judicata are grounded in public policy concerns and are intended to ensure finality, prevent

vexatious litigation and promote judicial economy[.]"  <u>Xiao Yang Chen v. Fischer</u>, 6 N.Y.3d 94,

100-01 (2005) (citations omitted).

New York "has adopted the transactional analysis approach in deciding <u>res

judicata</u> issues.  Under this [analysis], once a claim is brought to a final conclusion, all other

claims arising out of the same transaction or series of transactions are barred, even if based upon

different theories or if seeking a different remedy."  <u>O'Brien v. City of Syracuse</u>, 54 N.Y.2d 353,

357 (1981).  "A cause of action arises from the 'same transaction' and is barred by the judgment

in a prior proceeding 'where the same foundation facts serve as a predicate for each

proceeding.'" Fay v. S. Colonie Cent. Sch. Dist., 802 F.2d 21, 28 (2d Cir. 1986) (quoting Reilly v. Reid, 45 N.Y.2d 24, 30 (1978)) overruled on other grounds by Taylor v. Vermont Dep't of Educ., 313 F.3d 768 (2d Cir. 2002). "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata." Berlitz Schs. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980).

### 2.      **Analysis**

The Pension Fund and/or its trustees and officers have been parties to several actions Galtieri has brought in New York, including the 2005 Article 78 proceeding Galtieri filed in Supreme Court, New York County, the 2005 action Galtieri filed in the Eastern District of New York, and the wrongful death action before Justices Fusco and Minardo in New York Supreme Court, Richmond County, which culminated in a final judgment and in an execution order directing the Sheriff of the City of New York and the Pension Fund to turn over all proceeds of Galtieri's pension to Patricia Kane.[12]  (Weinblatt Decl., Ex. H (Execution Order) (Dkt. No. 33-8) at 3)

Under the doctrine of res judicata, the prior decisions, orders, and judgments of the New York state courts preclude Galtieri from litigating the same claims – or claims that could have been raised in these state court actions – before this Court. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

---

[12]  The Pension Fund was a party to the Richmond County wrongful death action as a result of Justice Fusco's March 8, 2010 order granting the Fund's motion to intervene. (Weinblatt Decl., Ex. F at 10)

In Galtieri's 2005 Article 78 proceeding against the trustees of the Pension Fund –
which proceeded before Justice Cahn of New York County Supreme Court – Galtieri argued that
the disbursement of pension benefits to Kane "constitute[d] an illegal garnishment and [an]
unlawful taking." Galtieri, No. 108166/05, slip op. at 1. Galtieri contended that it was "both
improper and illegal, in New York, for an accident disability pension to be treated as property
subject to equitable distribution, and to be attached and distributed, in whole or in part, to a
former spouse." Id. at 3-4. Justice Cahn noted, however, that under New York law Galtieri's
pension was "calculable as part of [his] gross income, and [was] subject to attachment under
appropriate circumstances." (Id. at 5) The court went on to dismiss Galtieri's action after
concluding that the decisions of the New Jersey courts garnishing Galtieri's pension were
entitled to "Full Faith and Credit" under the Constitution. (Id.) The court noted that "[t]o the
extent that petitioner seeks to change or to modify the orders he deems offensive, his remedy is
to appeal the New Jersey orders to the appropriate New Jersey courts." (Id. at 5-6)

In the wrongful death action before Justices Fusco and Minardo of New York
Supreme Court, Richmond County, Galtieri argued that "his pension 'is legally and statutorily
protected from execution, garnishment, attachment or any other process whatsoever" under the
New York City Administrative Code. (Weinblatt Decl., Ex. E (Dkt. No. 33-5) at 8) As
discussed above, Justice Fusco rejected that argument, finding "that '[v]ested rights in a non-
contributory pension plan are marital property to the extent that they were acquired between the
date of the marriage and the commencement of a matrimonial action, even though the rights are
un-matured at the time the action is begun.'" (Id. (quoting Majauskas v. Majauskas, 61 N.Y.2d
481, 485-86 (1984))

After Patricia Kane obtained a $31 million judgment against Galtieri in her

wrongful death action, Galtieri again moved to vacate the attachment order, repeating his earlier arguments that his pension "is exempt from execution, garnishment, attachment or assignment." (Weinblatt, Decl., Ex. G (N.Y. Order Denying Motion to Vacate Attachment) (Dkt. No. 33-6) at 4) Galtieri also argued that – to the extent New York law authorized such an attachment – "it represents an unconstitutional infringement upon his rights of contract and due process under the New York State and United States Constitutions." (Id.)

In denying Galtieri's motion to vacate the attachment, and in granting Patricia Kane and the Kane estate's motion for an order directing the Sheriff and the PPF to turn over the pension funds to Patricia Kane and the Kane estate, Justice Minardo noted that "[e]ssentially the same argument as that tendered herein was raised [before] and rejected by Justice Fusco in his March 2010 Decision and Order, which remains in full force and effect. Accordingly, [Galtieri] is bound by that determination." (Id.)

While, in the instant complaint, Galtieri seeks a new form of relief – i.e., a declaration that he is entitled to "withdraw from the pension [system]" and "close his account with the [Pension Fund]," see Cmplt. (Dkt. No. 1) at ¶¶ 1, 12 – this contention is simply another effort on Galtieri's part to exercise control over pension benefits that New Jersey and New York courts have repeatedly ruled he no longer controls.

It is clear that "the same foundation facts serve as a predicate" for this lawsuit and the earlier proceedings in New York state court. When Galtieri filed the instant complaint in October 2011, his pension was subject to pre-judgment attachment pursuant to Justice Fusco's May 27, 2009 order. (See Weinblatt Decl., Ex. E (N.Y. Ex Parte Attachment Order (Dkt. No. 33-5)) The essence of Galtieri's claims in the wrongful death action before Justices Fusco and Minardo in Richmond County, in earlier New York and New Jersey state court proceedings, and

now is that – as a result of his contractual relationship with the Pension Fund and provisions of the New York City Administrative Code, the New York State Constitution, and the United States Constitution – his "pension is exempt from all legal process"; "the pension he receives is a property right guaranteed by the Fourteenth Amendment"; that property right entitles him to dispose of the pension benefits as he sees fit; and his pension is "therefore not subject to the whims of the State Court or the Police Pension Fund." (Cmplt. (Dkt. No. 1) at ¶¶ 12-13) Because these claims have repeatedly been rejected by the New York courts – including in the wrongful death action before Justices Fusco and Minardo in which the Pension Fund was a party and in which a final judgment was entered – res judicata bars Galtieri from re-litigating these claims here.

       Galtieri's attempt to re-frame his claim as one involving his right to "withdraw from the fund and close [his] account" (Cmplt. ¶ 12), does not change the analysis.  Under New York law, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'"  In re Hunter, 4 N.Y.3d 260, 269 (2005) (quoting O'Brien, 54 N.Y.2d at 357).  The "right to withdraw" claim "aris[es] out of the same transaction or series of transactions."  In other words, Galtieri's argument for why he has a right to withdraw from the pension system relies on the same predicates as his earlier claims:  his contractual relationship with the Pension Fund and provisions of the New York City Administrative Code, the New York State Constitution, and the United States Constitution that allegedly bar any interference with his control over his pension.  Although the "right to withdraw" theory is a "different theor[y]" for the relief Galtieri seeks in the instant case and sought in the earlier litigations – control over his pension benefits – that difference is not sufficient to permit him to avoid application of res

judicata. This result accords with the purpose of res judicata, which is "to provide finality in the resolution of disputes," recognizing that '[c]onsiderations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation.'" In re Hunter, 4 N.Y. 3d at 269-70 (quoting Matter of Reilly v. Reid, 45 N.Y.2d 24, 28 (1978)).

Application of res judicata is likewise necessary here because "a different judgment" in this case would serve to "impair or destroy rights or interests established by the judgment entered in [an earlier] action[.]" Herendeen v. Champion Int'l Corp., 525 F.2d 130, 133 (2d Cir. 1975); see also Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002) ("'Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action.'" (quoting Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 874 (2d Cir. 1991) (internal quotations omitted))). Accepting Galtieri's argument would render the prior judgment in the Richmond County wrongful death action a nullity, including the New York court's execution order directing that all proceeds from Galtieri's pension be provided to Patricia Kane.

In arguing that his claims in the instant case are not barred by res judicata, Galtieri contends that "prior to [Patricia Kane's] execution [against his pension benefits his] property rights were not violated," and that "the issue of withdrawing from the fund was not and could not be raised in prior proceedings," because "it was not until September 20, 2012 that Kane was able to [e]xecute against the pension." (Pltf. Reply Aff. (Dkt. No. 27) at 3) These arguments are nonsense. Galtieri filed this lawsuit on October 31, 2011 (Cmplt. (Dkt. No. 1)), before Patricia Kane had begun efforts to execute against the pension. Accordingly, Galtieri's argument that he could not seek to withdraw from the pension system before Patricia sought to execute against the

pension is refuted by the fact that Galtieri did in fact seek to withdraw from the pension system, received a denial from the Pension Fund, and then filed the instant suit all before Patricia sought to execute against the pension.

It is likewise self-evident that Galtieri could have sought to withdraw from the pension system and close his account at any point in time, just as he did in 2005 with respect to his Social Security benefits. That he might have chosen – for strategic reasons – not to assert this alleged right until now does not alter the applicability of res judicata.

Galtieri's argument that his "property rights were not violated" until Patricia sought to execute against his pension contradicts his oft-repeated claim – from 2007 to the present – that the garnishment and attachment of his pension benefits violates his property rights in his pension. As discussed above, Galtieri has repeatedly asserted in multiple courts over the past ten years that his pension benefits are immune from legal process, and that any attempt to restrain his pension benefits violates his property rights.

In any event, Galtieri lost all control over his pension on May 27, 2009, when Justice Fusco – after Galtieri's conviction for second-degree murder – entered an ex parte order of attachment freezing Galtieri's pension benefits "up to the amount of $10,000,000 and any costs and sheriff's fees." (Weinblatt Decl., Ex. E (N.Y. Ex Parte Attachment Order) (Dkt. No. 33-5) at 1-2) After the $31 million verdict against Galtieri in his daughter's wrongful death action, Galtieri's loss of control over his pension benefits was confirmed by Justice Minardo's order to the City Sheriff and the PPF that they "pay any and all money currently held by them from the retirement benefits of . . . Galtieri . . . to . . . Patricia Kane." (Weinblatt Decl., Ex. H (Execution Order) (Dkt. No. 33-8) at 3) In short, the central issue in countless actions in both New Jersey and New York courts has been Galtieri's property rights in his pension, and he has

contended throughout these proceedings that his property rights in his pension have been violated.

Galtieri cannot escape the effect of the prior state court decisions by seeking a new form of relief or by presenting a different theory – a violation of his alleged right to withdraw from the pension system – to justify his renewed effort to control the disbursement of his pension benefits. Because Galtieri's claims are barred under the doctrines of collateral estoppel and res judicata, Defendant is entitled to judgment on the pleadings.[13]

## CONCLUSION

For the reasons stated above, the Pension Fund's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 28) and to close this case.

Dated:  New York, New York          SO ORDERED.
        September 15, 2014

_____
Paul G. Gardephe
United States District Judge

---

[13] Even if it were necessary to reach the merits of Plaintiff's claims, they do not meet the plausibility standard under Iqbal and Twombly. New York's highest court has ruled that police pensions are subject to execution and attachment in New York under the circumstances present here. See Majauskas, 61 N.Y.2d at 485-86 (upholding assignment of police pension pursuant to terms of a divorce decree, and holding that "[v]ested rights in a noncontributory pension plan are marital property to the extent that they were acquired between the date of the marriage and the commencement of a matrimonial action, even though the rights are unmatured at the time the action is begun."). Moreover, the Complaint does not provide any factual or legal basis – whether in contract, statute, or regulation – for Galtieri's contention that he has an absolute right to withdraw from the PPF and thereby frustrate the garnishment, attachment, and execution orders that have been issued by the state courts. To the contrary, the Pension Fund's letter to Galtieri – attached as Exhibit B to the Complaint – states that "there is not [a] mechanism by which a member may withdraw from the retirement system," and that the PPF "is legally obligated to make pension distributions in accordance with the law." (Cmplt., Ex. B (Oct. 5, 2011 Pension Fund Ltr.) The Complaint does not plead any facts suggesting the contrary.